Ricky Joe Cowgill was indicted by the March 1982, term of the Calhoun Grand Jury for the September 5, 1981, first degree robbery of the Calhoun Drugstore. Ala. Code § 13A-80-14 (1975). Trial was had with the jury finding him guilty as charged. Pursuant to the provisions of the Habitual Felony Offender Statute, § 13A-5-9, Code of Alabama 1975, the trial court sentenced appellant to life imprisonment. Hence this appeal.
No issue is raised on appeal challenging the sufficiency of the State's evidence. The facts are as follows:
Around 4:30 p.m. on September 5, 1981, two white males entered the Calhoun Drugstore. One approached Mrs. Lynn Gardner, the sales clerk on duty, and asked her for some headache powders, while the other walked toward the prescription department. Mrs. Gardner testified that the man that approached her drew a gun, pointed it at her head, and told her to "get down that this was a hold up." The robbers forced her toward the prescription department. There, the owner, Richard Boozer, was confronted by the two men, both of whom were armed. Mrs. Gardner and Mr. Boozer were forced to lie face down on the floor as the robbers took Mr. Boozer's coin collection from his safe and numerous containers of narcotic drugs. One of the robbers forced Mrs. Gardner to give him the keys to her car, which was parked behind the drugstore. Shortly thereafter, Mrs. Boozer and another employee returned from making some deliveries. As they entered the drugstore from the rear entrance, the robbers forced them to lie on the floor. The robbers also took Mrs. Boozer's car keys but could not unlock the car door. They re-entered the store and forced Mrs. Boozer to open it for them. At some point during the robbery, a customer entered the store and was forced to lie face down with the others. As they were fleeing, the robbers fired two shots into the drugstore. Fortunately, no one was struck. Throughout the ordeal, the robbers threatened to kill the Boozers and their employees. They told them not to look at them or they would be shot. After the robbers left, a customer entered the drugstore and the victims got off the floor and telephoned the police.
 I
Appellant contends that the trial court denied him the opportunity to examine Mrs. Boozer on voir dire in order that he might test the admissibility of her identification testimony.
Appellant had previously made the same request concerning State's witnesses Mrs. *Page 519 
Gardner and Mr. Boozer. In both instances his request was granted. Mrs. Gardner made no pre-trial identification of appellant, while both Mr. and Mrs. Boozer did. They had viewed five or six photographic arrays and had positively identified appellant from the first two. Both arrays were admitted into evidence.
Nowhere during the direct examination of Mrs. Boozer did appellant request a voir dire examination, as he had previously done during the direct examination of Mrs. Gardner and Mr. Boozer. In addition, appellant neither filed a pre-trial motion to suppress his in-court identification, nor orally moved for such before trial. When the State inquired of Mrs. Gardner as to the identity of the robbers, appellant moved to suppress her identification.
Appellant's motion stated:
 "MR. QUICK: Your Honor, I would like to make a motion that any evidence which may be produced by the State to anyway implicate this Defendant as far as identification purposes, be suppressed from this witness and I don't know whether the Court would rather me do this voir dire per witness or whether you would like to go ahead and go through the complete voir dire, at this time." (Emphasis added.)
The trial court ascertained that the State was not planning to identify appellant through Mrs. Gardner's testimony. The court did not rule on appellant's motion, and Mrs. Gardner did not identify the appellant.
During the direct examination of Mr. Boozer, appellant requested as follows: "I would like to conduct voir dire at this time, out of the presence of the jury." During the voir dire examination, Mr. Boozer testified that he was positive that appellant was one of the robbers, and that his in-court identification was based upon his recollection of the events which occurred during the robbery. His testimony then proceeded, and he identified appellant in court.
Later, during the direct examination of Mrs. Boozer, she identified appellant, in court, as one of the robbers, without objection. Mrs. Boozer was thoroughly cross-examined concerning the photographic arrays from which she had identified appellant. She testified that she had no hesitation in recognizing and identifying appellant from his photograph, and that no one informed her that the arrays contained the photograph of a suspect, directed her attention to any of the photographs, or informed her that one of the persons in the arrays was in custody.
The trial court did not instruct appellant as to the procedure he should follow in challenging the in-court identifications of the witnesses. Nevertheless, appellant established the pattern of requesting a voir dire examination of each witness who might identify him as one of the robbers. Appellant failed to secure a ruling on his motion made during the direct examination of Mrs. Gardner. Later, the trial court granted his motion to examine Mr. Boozer on voir dire. There was, however, no motion or objections presented to the trial court during the examination of Mrs. Boozer on which it could rule.
This court's jurisdiction is appellate only, Hill v. State,409 So.2d 943 (Ala.Cr.App. 1981), and its review is limited to matters on which rulings are invoked at the trial court. Harrisv. State, 420 So.2d 812 (Ala.Crim.App. 1982). An adverse ruling is a preliminary requirement to preservation of error for appellate review. See e.g., Walker v. State, 416 So.2d 1083
(Ala.Cr.App. 1982).
In Shelton v. State, 384 So.2d 869, 870 (Ala.Crim.App.),cert. denied, 384 So.2d 871 (Ala. 1980), we stated:
 "A trial court is not obliged to take witnesses out of turn merely because opposing counsel wants to examine them on voir dire at counsel's convenience. The trial judge is vested with discretion in the conduct of a trial, and appellate courts will not interfere unless there has been a clear abuse of that discretion." (Citations omitted.)
Accord Matthews v. State, 401 So.2d 241 (Ala.Cr.App.), cert.denied, 401 So.2d 248 (Ala. 1981). *Page 520 
A similar situation arose in Burke v. State, 44 Ala. App. 379,209 So.2d 859 (1968). There, the defendant desired to question a witness concerning some mug shots from which the witness identified the defendant as one of the robbers. The court noted:
 "The only purpose appellant would have in questioning the witness on voir dire would be to determine the `truth' concerning the alleged identification of appellant. That is to say: what were the circumstances surrounding the identification; was the witness `led' to identify the appellant; was he influenced in his identification?" Id.
209 So.2d at 862.
The inquiries made of both Mr. and Mrs. Boozer by both appellant and the State revealed no improprieties in the pre-trial identification process. We have reviewed the photographic arrays admitted into evidence and find the individuals depicted to be similar in all physical characteristics. The record reveals nothing which would raise any doubt as to the legality of the display of the arrays to the witnesses. Consequently, we find no error in this regard.Holified v. State, 347 So.2d 559 (Ala.Cr.App.), cert. denied,347 So.2d 561 (Ala. 1977).
 II
Appellant's second issue concerns the trial court's denial of his motion to exclude Mrs. Boozer from testifying. The basis for his contention on appeal is found in the following motion, made prior to Mrs. Boozer's testifying:
 "MR. QUICK: Your Honor, at this time, I would like to make a motion and this motion was previously made; that this witness be excluded from testimony, based on the fact that back at preliminary hearing I made a motion that she be excluded from the courtroom. She was allowed to sit in the courtroom and she was allowed to hear Mr. Boozer's complete testimony on the case. And we feel like that even though that this witness may not deliberately and intentionally tell a nontruth; at the same time, her testimony is tainted by that fact that she did hear her husband's testimony under pressure. And we ask that she be excluded."
The trial court denied appellant's motion, stating:
 "THE COURT: There is nothing in the District Court record that shows any motion ever made in that regard, number one. Number two, that's a preliminary hearing and I am not going to question Judge Albea's exercise of his discretion in whether or not a witness was excused from the rule or not; that's a discretionary matter and your motion will be overruled."
A careful review of the record on appeal reveals nothing to substantiate appellant's contention. In addition, the record does not reflect that appellant requested that the witnesses be sequestered at trial. However, it appears that Mr. and Mrs. Boozer were seated at the table with the assistant district attorney. This court's review is limited to matters found in the record submitted on appeal and not by allegations made at trial or arguments made in brief, reciting matters not disclosed or supported by the record. Harris, supra.
In the recent case of Young v. State, 416 So.2d 1109, 1111
(Ala.Cr.App. 1982), we stated:
 "Where the rule for the exclusion of witnesses from the courtroom is invoked, it is within the sound discretion of the trial court to allow any one of the witnesses to remain in the courtroom during the examination of the others. . . .
. . . .
 "The purpose of sequestration is to obviate as far as possible one witness's trying to make his testimony consistent with that of another. As was stated in Beddow, supra, `the efficacy of sequestration — which can only occur during the trial — is probably overrated. The law has moved from oath-taking to cross examination in its search for the truth.'" (Citations omitted.)
Even where a witness remains in the courtroom in violation of the rule, the trial court's decision as to his testifying or not is *Page 521 
not open to review absent a showing of any injury to the defendant by reason of any infraction of the rule. Pope v.State, 367 So.2d 998 (Ala.Cr.App. 1979); Stinson v. State,341 So.2d 185 (Ala.Cr.App. 1977); see generally Goodman v. State,52 Ala. App. 265, 291 So.2d 358 (1974); Beddow v. State,39 Ala. App. 29, 96 So.2d 175 (1956), cert. denied, 266 Ala. 694,96 So.2d 178 (1957), cert. denied, 355 U.S. 930, 78 S.Ct. 412,2 L.Ed.2d 414 (1958).
It is normal to expect that a husband and wife who are victims of a crime will discuss the crime prior to the initiation of legal proceedings. Consequently, each should be fully aware of what testimony the other plans to give. In fact, the record supports a finding that Mr. and Mrs. Boozer discussed the robbery prior to appellant's preliminary hearing. Thus, Mrs. Boozer's remaining in the courtroom during the reception of Mr. Boozer's preliminary hearing testimony would appear to have revealed to her nothing that she did not already know and had not previously discussed with her husband.
From the posture of the record before us, we do not find reversible error in the trial court's ruling.
 III
Finally, appellant challenges the in-court identifications made by Mr. and Mrs. Boozer, specifically alleging that the photographic arrays were impermissibly suggestive so as to create a substantial likelihood of irreparable misidentification. We disagree.
The general rules governing the admissibility of identification testimony were recently stated in Jackson v.State, 414 So.2d 1014 (Ala.Cr.App. 1982). Consequently, we need not restate them herein.
As we stated in Phillips v. State, 409 So.2d 918, 920
(Ala.Crim.App. 1981):
 "The first prong in determining whether a pretrial identification can be properly admitted is whether the photographic lineup is impermissibly suggestive. If it is not, the inquiry ends. However, even if there had been an unduly suggestive pretrial identification procedure, the incourt identification testimony need not be excluded if the prosecution can establish by clear and convincing testimony that, rather than stemming from the unfair pretrial confrontation, the identification has an independent source." (Citations omitted.)
In addition to the testimony of Mr. Boozer summarized above, he testified that the lighting was very good in his drugstore. He had the opportunity to view both robbers continuously from the time they entered the store until they approached him. Mr. Boozer stated that he was not mistaken about his identification of appellant as one of the robbers, and that he was "absolutely positive" of his identification of appellant despite a discrepancy in his estimation of appellant's weight given in his description of appellant to the police and appellant's weight at trial. Mr. Boozer testified that the officer who showed him the photographic arrays made no statement to him other than that he had some photographs that he wanted Mr. Boozer to view.
Mrs. Boozer testified that she had no question in her mind about appellant's being one of the robbers. Although she stated that she was not a good judge of height or weight, she could tell that appellant had gained some weight since the robbery and preliminary hearing. Concerning the photographic arrays she had viewed, Mrs. Boozer testified that she and her husband viewed them separately.
We agree with the trial court's assessment of the two photographic arrays admitted into evidence wherein it stated that all of the photographs appear "to have enough likenesses about them to not single any one . . . out. . . . In fact, the Defendant . . . appears much thinner in the photograph than he appears here in the courtroom today. . . . From what I have seen, it appears to be a reasonable photo lineup."
We have reviewed the record in light of appellant's contention and conclude that the photographic identifications were not "suggestive." Furthermore, the in-court identifications had a basis independent of the *Page 522 
photographic identifications and, thus, for that reason are admissible. Therefore, the trial court properly admitted the in-court identifications made by Mr. and Mrs. Boozer. Jackson, supra; Phillips, supra. Any defects or inconsistencies of such with their pre-trial identifications went to the weight and credibility of their testimony. Lewis v. State, 410 So.2d 474
(Ala.Crim.App. 1982).
We have reviewed appellant's contentions on appeal and find no error. This cause is hereby affirmed.
AFFIRMED.
All the Judges concur.